**Leroy STOUT, Petitioner**

v.

**WORKERS' COMPENSATION APPEAL BOARD (PENNSBURY EXCAVATING, INC.), Respondent.**

Commonwealth Court of Pennsylvania.

Submitted on Briefs Feb. 1, 2008.
Decided May 22, 2008.

Amit J. Shah, Philadelphia, for petitioner.

John J. Muldowney, Philadelphia, for respondent.

BEFORE: SMITH–RIBNER, Judge, and SIMPSON, Judge, and FLAHERTY, Senior Judge.

OPINION BY Judge SIMPSON.

In this workers' compensation appeal, we consider an employer's subrogation rights in the context of two civil actions filed by the injured employee. In particular, Leroy Stout (Claimant) challenges orders granting Pennsbury Excavating, Inc.'s (Employer) review petition seeking subrogation under Section 319 of the Workers' Compensation Act (Act)[1] against Claimant's third party tort recovery. Claimant asserts the Workers' Compensation Appeal Board (Board) erred in affirming the subrogation award because Employer and its workers' compensation insurer, Selective Way Insurance Company (Insurer), engaged in deliberate bad faith conduct in order to subvert Claimant's third party recovery. Claimant further asserts the Workers' Compensation Judge's (WCJ) decision fails the reasoned decision requirement of the Act. For the following reasons, we affirm.

## I. Background

In August 1997, while working for Employer as a landscaper, Claimant sustained a work injury while removing concrete from a job site. A large piece of concrete fell from a crusher's conveyor belt and struck him in the head. In September 1997, Employer issued a notice of compensation payable (NCP) describing the injury as a concussion. Pursuant to the NCP, Claimant received $503.17 in weekly benefits. As of April 2006, Claimant received total compensation benefits of $269,545.00, including $223,974.29 in weekly indemnity benefits and $45,570.71 for medical expenses.

Following the accident, Claimant filed the first of the two relevant civil actions, a products liability action (products liability action). The defendants included the manufacturer of the concrete crusher, Portec, Inc., an employment service, and the owner of the concrete crusher involved in the work injury, Morrisville Supply Corporation. Morrisville Supply had no employees of its own, but acquired workers from Employer. Morrisville Supply is a separate corporation from Employer, but the same person is vice president of both corporations. See Stout v. Portec, Inc., Labor Ready, Inc. & Morrisville Supply Corp., (Pa.Super., No. 3085 EDA 2001, filed July 24, 2002); Reproduced Record (R.R.) at 357a–75a.

Claimant reached a settlement with two of the defendants. Claimant subsequently obtained a jury verdict against Morrisville Supply in the amount of $3,221,188.87, despite its defense that Claimant was its borrowed servant and it was therefore immune from third party suit under the exclusive remedy provision of the Act.[2] This immunity defense is pertinent to Claimant's current contention that Employer and Insurer conspired to subvert his third party recovery. Ultimately, judgment was rendered on the verdict, and the settlements and judgment were paid. Claimant's third party recovery totaled $3,321,188.87.

Thereafter, in 2004, Claimant filed the second of the two relevant civil actions, alleging abuse of process and civil conspiracy during the handling of the products liability action (abuse of process action). The defendants were Insurer, Employer and Morrisville Supply, their common vice president and his wife (who was the president of Morrisville Supply), and various lawyers, claims directors, insurance employees and others involved with the products liability action and with the insurance

---

**1.** Act of June 2, 1915, P.L. 736, as amended, 77 P.S. § 671.

**2.** See Section 303(a) of the Act, 77 P.S. § 481(a).

coverage for Employer and Morrisville Supply. The most prominent theory of the abuse of process action was that various defendants conspired to improperly enable Morrisville Supply, a sham corporation, to raise the immunity defense in the products liability action. *See* Abuse of Process Complaint at ¶¶ 46–51; R.R. at 127a–29a. The record does not indicate whether this action has moved beyond the pleadings.

Meanwhile, Employer filed a review petition asserting a subrogation claim for the total compensation paid Claimant. In September 2006, the WCJ circulated a decision finding Employer entitled to subrogation to Claimant's products liability recovery. The WCJ found Claimant presented no factual evidence to dispute either his receipt of workers' compensation benefits or the products liability recovery. The WCJ awarded Employer a lump sum payment from Claimant of $269,545.00 for the accrued lien as of April 2006, and an ongoing credit against the balance of the recovery.

On appeal to the Board, Claimant argued the WCJ failed to make findings regarding his evidence about his abuse of process action. Claimant further alleged the WCJ failed to determine whether Employer's conduct disqualified it from its right to subrogation pursuant to *Thompson v. Workers' Compensation Appeal Board (USF&G Co.)*, 566 Pa. 420, 781 A.2d 1146 (2001) (although right to subrogation under Section 319 is absolute, subrogation may be inappropriate in the face of deliberate bad faith conduct by the employer).

 In rejecting Claimant's argument, the Board stated:

We cannot agree with Claimant that the WCJ was required to make a finding of whether or not [Employer's] conduct fell within the conduct excusing it from its right to subrogation pursuant to

[*Thompson*]. In *Thompson*, the Supreme Court held that an employer has an absolute right to subrogation, but noted that a different calculus may be required in circumstances where an employer deliberately acts in bad faith to subvert an employee's third party suit. In such cases, a showing of bad faith that subverted an employee's recovery in a third party action was required.

In this case, Claimant provided no evidence that [Employer] subverted his third party recovery at all, let alone in bad faith. Instead, he introduced pleadings from abuse of process actions that he filed against various parties in common pleas court, and argues that the matter should be stayed pending completion of the common pleas litigation. We disagree.

\* \* \*

The WCJ was well within his discretion to close the record, and not await resolution of the common pleas court litigation. Although *Thompson* recognized a bad faith claim as an exception to the employer's right of subrogation under Section 319, Claimant provides us with no authority requiring the WCJ to place a request for subrogation in abeyance pending completion of litigation in another forum. Rather, the WCJ has sole jurisdiction to determine subrogation under the Act. [*Romine v. Workers' Compensation Appeal Board (CNF, Inc./Potato Sack)*, 798 A.2d 852 (Pa. Cmwlth.2002)]. A claimant raising a bad faith defense under *Thompson* should be reasonably expected to present evidence in support of it before the WCJ, and is not entitled to an indefinite postponement of the WCJ's proceedings while he acquires supporting evidence or possibly a judgment in parallel litigation outside the workers' compensation system.

Bd. Op. at 4–5 (citations omitted). Claimant petitions for review.[3]

## II. Subrogation

■ Citing *Thompson*, Claimant argues the WCJ improperly granted Employer's review petition where Employer undertook, in deliberate bad faith, to subvert a third party suit brought by an employee. In *Thompson*, the Supreme Court recognized that subrogation under Section 319 is absolute and by the plain language of that provision, not subject to equitable restrictions. However, in *dictum*, the Court reasoned:

> Given the substantial benefits conferred upon employers by the [Act], and the inherently equitable nature of the doctrine of subrogation, it would be unreasonable to permit an employer both to act in deliberate bad faith to subvert an employee's third party action, and then to demand subrogation arising from that action. Accordingly, nothing in this Opinion shall be construed as suggesting that subrogation would be appropriate in the face of deliberate, bad faith conduct on the part of the employer. No showing of bad faith has been rendered here, however; thus the employer's right to subrogation remains absolute.

566 Pa. at 433, 781 A.2d at 1154.

Here, Claimant offered into evidence before the WCJ his complaint and other filings pertaining to the abuse of process action. Relevant for the current discussion, Claimant averred Pennsbury Excavating & Landscaping Inc., his actual employer,[4] was not a named insured in a workers' compensation insurance policy (Insurer's Policy), which only covered the common vice president and his wife. *See* WCJ Ex. C–5; R.R. at 311a. Claimant further alleged certain defendants fraudulently inserted an unsigned endorsement into the file containing Insurer's Policy. The endorsement added to the named insured various parties, including Employer and Morrisville Supply. *Id.*; R.R. at 312a. Claimant argues the endorsement is not effective for numerous reasons.

Consequently, Claimant asserts that all workers' compensation benefits he received were from Insurer on behalf of the common vice president and his wife, not on behalf of Employer. Claimant thus argues Employer cannot be entitled to subrogation.

■ In light of *Thompson*, Claimant contends the WCJ prematurely issued the subrogation award while Claimant's abuse of process action remains pending. A decision in the abuse of process action, Claimant maintains, will directly address whether Employer acted fraudulently and whether such behavior abridged its right to subrogation.

Employer counters that the WCJ's subrogation award was properly based on the undisputed facts that Claimant received a $3,321,888.87 third party recovery related to his work injury, and that he continued to receive compensation, totaling $269,545.00 as of April 2006, from Insurer. Insurer, Employer asserts, therefore has an absolute right of subrogation. *Thompson.* Employer concludes it is entitled to

---

**3.** This Court's review is limited to determining whether the WCJ's findings of fact were supported by substantial evidence, whether an error of law was committed or whether constitutional rights were violated. *Minicozzi v. Workers' Comp. Appeal Bd. (Indus. Metal Plating, Inc.)*, 873 A.2d 25 (Pa.Cmwlth.2005).

**4.** Employer acknowledges various derivations of its name in the record. *See, e.g.,* Employer's review petition (Pennsbury Excavating & Landscaping); WCJ caption (Pennsbury Excavating & Landscaping, Inc.); Board caption (Pennsbury Excavating, Inc.); Claimant's petition for review (Pennsbury Excavating, Inc.).

immediate payment of its subrogation lien from Claimant's third-party recovery. *Id.*

▮ We agree. "Subrogation in our workers' compensation system is a significant and firmly established right." *Brubacher Excavating, Inc. v. Workers' Comp. Appeal Bd. (Bridges)*, 575 Pa. 168, 171, 835 A.2d 1273, 1275 (2003). "[T]he statutory right to subrogation is 'absolute and can be abrogated only by choice.'" *Id.* at 172, 835 A.2d at 1275 (citation omitted). "This is so because the statute granting subrogation 'clearly and unambiguously' provides that the employer 'shall be subrogated' to the employee's right of recovery." *Id.* at 172, 835 A.2d at 1275–76 (citation omitted).

Here, the essential facts supporting subrogation are undisputed. Claimant received compensation payments from Insurer, which accepted liability for the work injury. He also obtained a third party recovery in the products liability action arising from his work injury. Neither Employer nor Insurer was a party to the products liability action. As such, Employer was entitled to an absolute right of subrogation to Claimant's third party recovery. *Id. See also Thompson* (Section 319 subrogation is automatic; *ad hoc* equitable exceptions do not apply to Section 319).

Further, although Employer's name varied in documents throughout the workers' compensation and products liability proceedings, the references to Employer's workers' compensation insurer never changed. Claimant received all his workers' compensation benefits from Insurer. Section 401 of the Act provides that the term "employer" includes "his insurer if such insurer has assumed the employer's liability...." 77 P.S. § 701. Here, Insurer assumed liability for Claimant's work injury. As a result, Insurer is entitled to subrogation awarded against Claimant's third party recovery. Sections 319 and 401 of the Act; *PMA Ins. Group v. Workmen's Comp. Appeal Bd. (Kelley)*, 665 A.2d 538 (Pa.Cmwlth.1995) (workers' compensation insurer entitled to subrogation against claimant's third party recovery).

▮ Moreover, a determination of whether an employer or its insurer is entitled to subrogation falls within the exclusive jurisdiction of the workers' compensation authorities. *Romine v. Workers' Compensation Appeal Board (CNF, Inc./Potato Sack)*, 798 A.2d 852 (Pa. Cmwlth.2002). Common pleas courts lack jurisdiction to adjudicate the right of subrogation. *See id.* at 856, n. 10.

Given the foregoing, we discern neither error nor abuse of discretion on the part of the WCJ. The common pleas court cannot decide subrogation rights, and there is no indication when the abuse of process action will be resolved. We conclude that under the facts in this case, the refusal to grant an indefinite stay while the matter is litigated in a forum without power to decide the primary issue, during which period Employer and Insurer continue to pay workers' compensation benefits, is not grounds for reversal.

### III. Reasoned Decision

▮ Additionally, Claimant argues the WCJ's decision did not meet the reasoned requirement in Section 422(a) of the Act.[5]

---

5. Section 422(a), 77 P.S. § 834, provides:
 All parties to an adjudicatory proceeding are entitled to a reasoned decision containing findings of fact and conclusions of law based upon the evidence as a whole which clearly and concisely states and explains the rationale for the decisions so that all can determine why and how a particular result was reached. The [WCJ] shall specify the evidence upon which the [WCJ] relies and state the reasons for accepting it in conformity with this section. When faced with

He maintains the WCJ did not address or even consider numerous exhibits Claimant submitted to show Employer's deliberate bad faith. Claimant asserts Insurer repeatedly changed the name of Employer on numerous officially filed documents in this litigation. *See* R.R. at 20a–322a. Claimant thus contends the WCJ prematurely granted subrogation while the abuse of process claim remained pending. Otherwise, he may be forced to litigate the same issues twice.

Employer responds the WCJ's decision met Section 422(a)'s reasoned decision requirement. It asserts the pleadings, records and other documents Claimant submitted related to his abuse of process claim are uncorroborated. Employer objected to these documents. Employer therefore asserts they do not constitute competent evidence to support findings. *See Flanagan v. Workmen's Comp. Appeal Bd. (U.S. Steel Corp.),* 143 Pa.Cmwlth.92, 598 A.2d 613 (1991) (findings based solely on uncorroborated hearsay will not stand). Further, Employer argues these pleadings and records are not pertinent to the issue of whether Insured was entitled to subrogation against Claimant's third party recovery.

 To constitute a reasoned decision within the meaning of Section 422(a), a WCJ's decision must permit adequate appellate review. *Daniels v. Workers' Comp. Appeal Bd. (Tristate Transp.),* 574 Pa. 61, 828 A.2d 1043 (2003). Section 422(a) does not require the WCJ to discuss all of the evidence presented. *Montgomery Tank Lines v. Workers' Comp. Appeal Bd. (Humphries),* 792 A.2d 6 (Pa.Cmwlth. 2002). The WCJ is only required to make the findings necessary to resolve the issues raised by the evidence and relevant to the decision. *Id.*

A review of the WCJ's decision indicates it meets Section 422(a)'s reasoned decision requirements. The WCJ made the following critical findings:

10. [Claimant] was injured in the course of employment and related thereto on August 21, 1997, was paid workers['] compensation benefits pursuant to the [Act] and was successful in a third party recovery involving the same injury. It is undisputed [Claimant] received a total of $3,321,188.87 in a combination of settlement funds and jury verdict awards related to the August 21, 1997 injury.

11. [Claimant] as of April 10, 2006 … has received compensation benefits equaling $269,545.00 with payments ongoing for the August 21, 1997 injury.

12. [Employer] is entitled to subrogation pursuant to the provisions of Section 319 of the Act as to the third party recovery for the August 21, 1997 work injury. [Claimant] has presented no factual evidence to dispute the receipt of the $3,321,188.87 in third party awards as regards the August 21, 1997 injury. [Claimant] presented no evidence disputing his continued receipt of compensation benefits, with a total of $269,545.00 in benefits as of April 10, 2006.

WCJ Op. at 4.

As discussed above, these undisputed facts are sufficient to support a subrogation award in this case. Employer's statutory right to subrogation under Section

---

conflicting evidence, the [WCJ] must adequately explain the reasons for rejecting or discrediting competent evidence. Uncontroverted evidence may not be rejected for no reason or for an irrational reason; the [WCJ] must identify that evidence and explain adequately the reasons for its rejection. The adjudication shall provide the basis for meaningful appellate review.

319 is absolute, automatic and can be abrogated only by choice. *Brubacher.*

Moreover, the WCJ was not compelled to make findings on the documents Claimant submitted. In the absence of foundation testimony or competent corroborating evidence, the ambiguous documents are at best insufficient to establish the asserted reprehensible, coordinated state of mind of so many actors.

Discerning no error in the Board's decision, we affirm.

### ORDER

AND NOW, this 22nd day of May, 2008, the order of the Workers' Compensation Appeal Board is **AFFIRMED.**